## CONTINENTAL CASUALTY CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4347.   Decided October 13, 1926.   (250 P. 145.) ·

*George H. Smith, J. V. Lyle,* and *R. B. Porter,* all of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty Gen., for defendants.

CHERRY, J.

This is a review of proceedings had before the Industrial Commission, under the Workmen's Compensation Act.

Walter Brooks, an alien, while regularly employed by the American Fuel Company, at Sego, Utah, was killed by accident arising out of his employment on June 4, 1922. At the time of his death, his wife, Ellen Brooks, and his minor son, William Brooks, both aliens, were living with him at Sego, Utah, and were wholly dependent upon him for support. Liability for compensation at the maximum rate of $16 per week was admitted and paid for the period of 156 weeks, when the employer declined to make any further payments upon the ground that the dependents, shortly after the death of the employee, and on September 7, 1922, had departed from the United States and ever since had been residents of England. The matter was brought before the Industrial Commission and a hearing was had. After the hearing, the commission found the facts as above stated, and decided that, notwithstanding their removal to England, the dependents were entitled to compensation for the full period of time provided by law, as in the case of resident or citizen dependents. An order and award were accordingly made for the payment of compensation, at the rate mentioned, for an additional period of 156 weeks, or 312 weeks in all.

The objection to the award is based upon Comp. Laws Utah 1917, § 3140, as amended by Laws Utah 1921, c. 67, which, after providing in general for the amount of benefits in case of death, continues as follows:

"(8) When any alien dependent of the deceased resides outside of the United States of America or any of its dependencies, or Canada, such dependent shall be paid not to exceed one-half the amount provided herein."

The statute was interpreted by the Industrial Commission as having application only when the alien dependent resides outside of the United States, etc., at the time of the death of the employee, while the plaintiffs con-

tend for the construction that such nonresidence, occurring during any period of the time when compensation is payable, operates to reduce the amount to be paid.

The words of the statute, when given their ordinary signification, plainly permit the plaintiffs' contention, while the other view requires the interpolation of a limitation not contained in the statute itself. Besides, the provision relates to the amount of compensation which the dependent "shall be paid," and not to the amount which shall be awarded. If the residential status of a dependent was intended to be determined, once for all time, as of the date of the death of the deceased employee, it seems that the status, as determined, should have been made applicable to the time the compensation was awarded, rather than to the extended period during which it should be paid.

We know of no persuasive reason why the amount of compensation, as affected by the fact of residence, should be permanently fixed as of the status in that respect at the time of the employee's death; and, when the Legislature has failed to make such an intention apparent, and when there is nothing in the context nor general purpose or policy of the law which requires it, such limitation will not be supplied by judicial construction.

The principal reason for the policy of paying a less amount of compensation to dependents who are alien nonresidents is the well-known fact that the cost of living in most foreign countries is substantially less than in the United States. The policy of the law is defeated rather than promoted by that interpretation which would finally determine the matter according to the residence at the time of the employee's death. The period of payment in death cases extends over a considerable time—in most cases, for six years. It seems more in consonance with the spirit and purpose of the statute to accommodate the payments to such change as may occur during that period in the residence of alien dependents, rather than to compel payments based upon resi-

dence at any previous arbitrary time, when the fact of residence at the time of payment is different.

No positive judicial precedent upon the precise question has been called to our attention. However, in *Lubanski v. D., L. & W. R. R. Co.*, 81 Pa. Super. Ct. 538, some support may be found for the conclusions we have reached. There a similar application of a like statute was made by the Workmen's Compensation Board, and the amount of a previous award reduced on account of the intervening removal of dependents to a foreign country. On appeal, the award was assailed for other reasons, and affirmed. The court assumed, but did not decide, that the change of residence was a change of status.

The the reasons stated, we conclude that the Industrial Commission was without power to make the award in question, and the same is hereby annulled.

GIDEON, C. J., and THURMAN and FRICK, JJ., concur.

STRAUP, J., dissenting.

The deceased, a citizen of England, for some time prior to 1920, resided in Utah where he was employed. In February of that year he returned to England to get married and then brought his wife with him to Utah, where they had a settled and fixed abode and continuously resided and lived together for more than two years and until his death in June, 1922. He left surviving him his wife, a minor child, and a post-humous child. About three months after his death the wife and minor child returned to England where her parents resided and where she since lived. Thus, while the husband and wife at the time of his death were aliens, still she was not an alien dependent "residing outside" of but within the United States.

Notwithstanding her subsequent change of residence, the insurance carrier voluntarily paid the dependents the maximum rate of compensation, $16 per week, for nearly three years and then refused to make further or additional pay-

ments, wherefore these proceedings before the commission were instituted with the result that the carrier was required to continue such payments for the full period of six years or for 312 weeks from the death of the deceased.

Laws of Utah, 1921, c. 67, § 3140, subd. 2, provides that: "If there are wholly dependent persons at the time of the death, the payment shall be 60 per cent of the average weekly wage, but not to exceed a maximum of $16 per week, and to continue for the remainder of the period between the date of the death, and six years after the date of the injury, and not to amount to more than a maximum of $5,000 nor less than a minimum of $2,000;" subdivision 5, that a wife and minor children (under 16 years of age) living with the husband and parent "at the time of his death" are "presumed to be wholly dependent for support upon" him, and that "in all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee," etc.; and, by subdivision 8, that "when any alien dependent of the deceased resides outside of the United States of America or any of its dependencies, or Canada, such dependent shall be paid not to exceed one-half of the amount provided herein."

Thus, when subdivision 8 is considered in connection with the other subdivisions in the same section and relating to the same general subject of "Benefits in case of death," I think it clear that the amount of benefits to be paid is to be determined by the status of the dependents at the time of the death of the employee; and that in such respect a resident alien dependent stands on the same footing with a citizen dependent. If an award be made to a citizen dependent and he or she thereafter and within the period of the award departs from the United States and becomes a resident outside thereof, or of Canada, it is clear that such award or the amount of compensation, to which the dependent is entitled, is no way affected, nor is it to be

diminished on any theory that the dependent has gone to reside at some place where the cost of living and maintenance may be less than in the United States. Had the widow here at any time, while she continued to be a resident of the United States and of Utah, applied for an award, it is conceded that she would have been entitled to the same amount of compensation as though she had been a citizen, and that it would have been competent for the commission to have made an award of the maximum rate, as was done, and which voluntarily was paid by the carrier for nearly three years after the death of the deceased. But the contention is that while an award, or the amount to which a citizen dependent is entitled, is not affected by the dependent's subsequent change of residence, that of a resident alien is. But that section deals only with nonresident, not resident, alien dependents. When an award is made to a resident alien dependent it, in my judgment, may not, nor may the amount of compensation to which such a dependent is entitled, be diminished because of the dependent's subsequent change of residence, any more than that of a citizen dependent because of his or her subsequent change of residence. The reason given (the difference between the cost of living in this country and of Europe) for the distinction in the statute awarding to alien dependents residing outside of the United States and of Canada only one-half of the amount of compensation of resident aliens or citizens, is, I think, not well founded. Such circumstance would apply as well to a citizen dependent as to a resident alien and render the amount of the award dependent upon the cost of living. The more apparent reasons are that citizens and resident aliens may become public charges in this country and aliens residing out of the United States not, and for other reasons well recognized where nonresident aliens, in many other particulars, are not put on equal footing with citizens or resident aliens.

Lastly, if the conclusion of the prevailing opinion is correct, that though a resident alien dependent at the time of

the death of the deceased and so long as such dependent remains a resident of the United States is entitled to the same compensation as a citizen dependent, but loses such right upon thereafter and during the period of the award residing out of the United States and Canada, then does it follow that if an alien dependent at the time of the death of the deceased resides outside of the United States and Canada, but thereafter and during the period of the award becomes a resident of the United States, such dependent, for the remaining period, is entitled to the same compensation as a citizen dependent? I do not believe the statute intended to accomplish any such result, and yet I do not see how the one may be asserted and the other denied. It is of pecuniary concern to the carrier whether the dependents, at the time of the death of the deceased and prior thereto, were aliens residing out of the United States or whether they were residents of Utah and of the United States and there living with him; but it is of no pecuniary concern of the carrier whether such dependents thereafter, to better and more cheaply support themselves, or for other reasons, reside elsewhere nor, in my judgment, is an award to be made or the amount of compensation determined upon an inquiry of any contemplated change of residence of the dependent pending the period of the award.